UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LATEDIA WASHINGTON, on
behalf of herself and on behalf
of all others similarly situated,

    Plaintiff,
v.                                              Case No. : 2:21-cv-10445-LVP-RSW

DIALOGDIREDCT, INC.,

    Defendant.
_____/

**JOINT MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND
INCORPORATED MEMORANDUM IN SUPPORT THEREOF**

On January 6, 2022, this Court preliminarily approved the FCRA class action settlement between Plaintiff, Latedia Washington ("Plaintiff"), and Defendant DialogDirect, Inc., ("Defendant"). [Dkt.15]. The settlement resolved the consolidated actions on behalf of a class of 1,646 consumers defined as:

> **All U.S. Resident individuals on whom, during the Covered Period, an employment screening report for Defendant was conducted where the screening report was ordered between February 26, 2019 and July 1, 2021 and Defendant's records reflect that the screening report contained an item of information that was coded as potentially disqualifying for employment with Defendant.**

To compensate class members, Defendants agreed to a common fund of $487,500.00, to be pay class members that timely submitted claims and the cost of notice to class members and claims administration. Class Counsel, by separate

motion, also seeks payment from the fund for its reasonable attorneys' fees and costs and expenses incurred in the litigation, as well as Plaintiff's service award. [Dkt. 16].

## I. CLAIMS ADMINISTRATION

American Legal Claims Services, with the Court's approval, delivered notice of the settlement to the Settlement Class. As detailed below, the Claims Rate was very high compared to similar settlements, there were no objections or exclusions. Thus, it can be concluded that the notice program was effective and class members were satisfied with the settlement.

On January 20, 2022, the Court-approved notice packets were mailed to the Class Members on the Class List and the Settlement Website, (www.washingtonfcrasettlement.com) was posted. [Exhibit "1"- Settlement Administrator Indra Declaration, ¶¶ 5, 8]. Additionally, a toll free hotline, (800) 566-0684, was established for class members to obtain information about the settlement. *Id.*, ¶ 9.

Claims members were able to file claims by mail or through the settlement website. By the end of the claims deadline 253 valid claims were received, a take rate 15.4%. *Id.* ¶ 10. No class members objected or opted out of the Settlement. *Id.,* ¶¶ 11, 12.[1]

---

[1] Six deficient, invalid or duplicate claims were received.

2

## II. ARGUMENT

### A. The Settlement Merits Final Approval

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)) ("*UAW*"). Recently, in *Gascho*, the Sixth Circuit re-iterated the seven factors guiding the Court's inquiry in determining whether a class action settlement should be approved: (1) "the risk of fraud or collusion;" (2) the "complexity, expense and likely duration of the litigation;" (3) the "amount of discovery engaged in by the parties;" (4) the "likelihood of success on the merits;" (5) the "opinions of class counsel and class representatives;" (6) the "reaction of absent class members;" and (7) "the public interest." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269,276-77(6th Cir. 2016), *cert. denied*, 137 S. Ct. 1065 (2017) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Here, all seven *Gascho* factors support approving the Settlement.

### 1. The Risk of Fraud or Collusion

The first factor that the Court should consider in determining whether to grant final approval of the Settlement is the risk of fraud or collusion. *See Gascho*, 822 F.3d at 276-77. "Courts respect the integrity of counsel and presume the

absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *26 (E.D. Mich. July 13, 2006). Here, the action was resolved through the efforts of a respected class action mediator during an often contentious day of negotiations. The Court should be satisfied there was no "fraud or collusion' in this action. Therefore, this factor weighs in favor of granting this Motion.

## 2. The Complexity, Risk and Duration of the Litigation

"[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Southeastern Milk Antitrust Litig.*, 2012 WL 2236692, at *3 (E.D. Tenn. June 15, 2012) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)); *see also Gokare v. Fed. Express Corp.*, 2013 WL 12094870, at *4 (W.D. Tenn. Nov. 22, 2013) (granting final approval, court noted settlement "secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs and uncertainty of protracted litigation"). "Although this factor requires 'some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *IUE-CWA*, 238 F.R.D. at 595.

If this litigation had continued, Plaintiff and the Settlement Class would have faced significant obstacles to obtaining a settlement under equal or better terms than

4

those for which the Parties presently seek the Court's approval. Defendant would have contested any efforts to certify a class and will challenge Plaintiff's and the absent class members standing at the class certification phase. If a class was to be certified, Defendant would most likely have filed an interlocutory appeal pursuant to Rule 23(f). If the interlocutory appeal proved unsuccessful, Defendant would most likely move for decertification or appeal the class certification decision. Any one of these challenges would have prolonged the litigation at considerable expense to Plaintiff and potentially result in no recovery for Class Members. Still further, prevailing on liability at trial would not ensure class-wide recovery. Absent this settlement, to otherwise recover any statutory damages under the FCRA, Plaintiff and the Class Members would have to prove Defendant failed to comply with the statutory requirements an did so willfully. *See* 15 U.S.C. § 1681n(a); *Garland v. Memphis–Shelby County Airport Authority*, 2011 WL 13090678, at *4 (W.D. Tenn. July 19, 2011) (recognizing proving willfulness places a heavy burden on a plaintiff). *See, e.g.*, *Schoebel v. Am. Integrity Ins. Co.,* 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case seeking statutory damages because alleged violation was not willful); *Lewis v. Southwest Airlines Co.*, 2018 WL 400778, at *5 (N.D. Tex. Jan. 11, 2018) (summary judgment for defendant on issue of willfulness).

In short, any one of the challenges detailed above could significantly prolong the litigation at considerable expense and potentially result in no recovery for Class Members. With this Settlement, all risks are removed and Settlement Class Members obtained significant monetary awards. Taking into account the complexity and uncertainty of the litigation, the Settlement merits final approval.

### 3. The Amount of Discovery Engaged in By the Parties

By the time the Parties agreed to settlement terms, Class Counsel unequivocally had sufficient information to determine the value of the case and conclude the Settlement to be a fair compromise. This is all that is required for this factor to support approval. *See In re Regions Morgan Keegan Securities, Derivative, and ERISA Litig.*, 2016 WL 8290089, at *5 (W.D. Tenn. Aug. 2, 2016). As such, this factor weighs in favor of granting final approval.

### 4. Likelihood of Success on Merits Weighed Against Relief Obtained

The fourth factor is the likelihood of success on the merits weighed against the relief obtained by the settlement. *See Gascho*, 822 F.3d at 276-77; *see also Int'l Union, United Auto., Aerospace, and Agr. Implement Workers*, 497 F.3d at 631 (recognizing that a court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." (internal quotation marks and citations omitted)). Generally, class action settlements are favorable to courts

because "[e]xperience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict[.]" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). Therefore, settlements can still be fair, reasonable, adequate, and worthy of court approval when they do not provide the full relief that may be awarded at trial. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("The fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement.")

For the reasons previously detailed, Plaintiff would have to overcome several significant obstacles to obtain relief for the Settlement Class. By resolving the action, Plaintiff removed risk from the equation, secured significant monetary relief and effectuated prospective relief for future applicants and employees. In fact, the monetary benefits offered to Settlement Class Members exceed the "fair and reasonable" standard. Specifically, each Class Member's gross award is $296.00. [2] This compares very favorably to similar FCRA class action recoveries. The district court in *Hillson v. Kelly Services Inc.*, for example, summarized the details of recently-approved settlements, all of which are less than the Settlement in this case:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from

---

[2] Each Class Member that submitted a valid claim form is expected to receive approximately $182.00.

7

    the fund) is $30.00 per Class Member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25.00 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26.00); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33.00, $40.00, and $44.00).

2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017). In the end, weighing the probability of Plaintiff's success, coupled with the range of possible recovery, strongly favors final approval.

**5. Opinion of Class Counsel**

As elaborated herein and in his Declaration, Class Counsel believes this settlement is in the best interest of the Class, and merits approval by the Court. [Dkt.13-2 - Edelman Decl., P.148]. Class Counsel's approval and endorsement of the settlement also weighs in favor of approval. *See Olden v. Gardner*, 294 F. App'x 210, 219 (6th Cir. 2008) (a court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *9 (E.D. Mich. May 20, 2013) ("Plaintiffs' counsel's informed and reasoned judgment and their weighing of the relative risks and benefits of protracted litigation are entitled to deference.")

8

Class Counsel and Representative Plaintiff Washington have brought this Motion for Final Approval, joined by Defendant, because they believe the Settlement is a fair, reasonable and adequate result for Settlement Class Members. Thus, this factor weighs in favor of approving the settlement.

### 6. The Reaction of Absent Class Members

The sixth factor is the reaction of absent class members. *Gascho*, 822 F.3d at 276-77. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem*, 218 F.R.D. at 527; *see also, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair"); *Myszka v. National Collegiate Scouting Ass'n, Inc.*, 2014 WL 1364468, at *1 (N.D. Ill. Mar. 19, 2014) (finding that the complete lack of objections to the settlement supports final approval); *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *6 (S.D. Cal. Aug. 18, 2015) ("The reaction of Class Members can be characterized as positive. No objections have been filed, and there have been only 2 requests for exclusion."). Here, not a single class member objected or asked to be excluded. Moreover, "[t]hat the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem*, 218 F.R.D. at 527.

Thus, the reaction of absent class members to the settlement supports final approval.

### 7. The Public Interest

There is an "overriding public interest in favor of settlement of class action lawsuits." *Manners v. American General Life Insurance Co.*, 1999 WL 33581944, at *19 (M.D. Tenn. Aug. 11, 1999) (quoting *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992)). Here, the public interest is served by the Settlement. Although Defendant denies its practices were ever unlawful or deficient, it has enhanced its practices regarding the use of consumer reports for employment purposes to better ensure its pre-adverse action procedures are FCRA compliant. Finally, the existence of the Settlement in the public record serves as a deterrent to other users of consumer reports for employment purposes and consumer reporting agencies. Thus, the Settlement does not only benefit Settlement Class Members, it also benefits future employees and applicants, and provides compliance guidance to employers and consumer reporting agencies. Therefore, this factor weights in favor of final approval, as Plaintiff and her counsel have adequately represented the classes.

### III. PLAINTIFF'S COUNSEL AND PLAINTIFF HAVE ADEQUATELY REPRESENTED THE CLASS

Plaintiff, Ms. Latedia Washington, is the reason the Settlement Class Members are obtaining monetary awards and Defendant has enhanced its pre-

10

adverse action notice program. Prospectively, future applicants and employees will derive benefit from Plaintiff's endeavors. For the duration of the litigation, Plaintiff was actively involved – reviewing documents, participating in negotiations and providing her insight into Defendant's practices. [Dkt. 13-2, P.148].

Plaintiff's counsel is experienced in FCRA class action litigation, having served as class counsel on numerous occasions. [Dkt. 13-2, P.147]. In this matter, Plaintiff's counsel zealously and effectively litigated on behalf of Plaintiff and the Class against sophisticated and experienced defense counsel. Ultimately, through his efforts, Plaintiff's Counsel secured a very favorable outcome for Settlement Class Members.

Thus, Plaintiff and Plaintiff's Counsel have adequately represented the Class and should be confirmed as Class Representative and Class Counsel, respectively.

## IV. <u>NOTICE TO THE CLASS SATISFIED DUE PROCESS</u>

"Due process requires that notice to the class be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'" *Vassalle*, 708 F.3d at 759 (quoting *UAW*, 497 F.3d at 629). "All that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed

settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id*.

Here, the Class Notice previously approved by the Court, satisfies both Rule 23(e)(1) and due process. It plainly described the nature of the action; the definition of the Settlement Class; the claims in case; the details of the Settlement; Class Members' right to object to the settlement; the adequacy of representation; the attorneys' fees, cost and expenses to be requested by Class Counsel; the deadline for submitting objections; the binding effect of a judgment; and Class Members' right to appear and be heard at a fairness hearing. *See, e.g.*, *In re Regions Morgan Keegan Securities*, 2013 WL 12110279, at *4 (W.D. Tenn. Aug. 6, 2013) (notice sufficient where it "describes the nature of the class action, the proposed settlement terms, the proposed Plan of Allocation, and the requested attorney's fees and expenses in detail" and it was "written to be understood by non-attorneys."). Thus, the Court should find the Class Notice have met the requirements set forth in Rule 23(e)(1) and the due process rights of absent Class Members 23 of the Federal Rules of Civil Procedure, and constituted the best practicable notice under the circumstances."). Rule 23(e) requires that notice fairly apprise class members of the terms of the proposed settlement.

Here, as detailed in the Settlement Administrator's declaration, the Court-approved Notice was initially mailed to 1,647 Class Members, informing them of

the Settlement. The Notice provided detailed information to Class members concerning: (a) the proposed Settlement; (b) the rights of Class members, including the right and manner in which to make objections; (c) the background of the litigation; (d) the benefit to the Class from the Settlement; (e) the request for attorneys' fees and reimbursement of litigation expenses; (f) the Settlement hearing to take place before this Court; and (g) the examination of Court records should any Class member elect to do so. As such, the Notice fairly apprised the potential Class members of the Settlement and their individual rights with respect thereto. Furthermore, the parties established a website (www.washingtonfcrasettlement.com) and toll-free hotline (1-800-566-0684) for inquires and further information concerning the Settlement. Two Hundred Fifty Nine Class Members submitted claims forms. As noted above, the notice program satisfies the dictates of Rule 23 and due process requirements, and further supports approval of the Settlement bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, class members have the same claims as other members of the respective classes. Correspondingly, the settlement provides that each participating class member will receive an equal portion of the respective settlement funds. Also, the respective releases affect class members in the same way. As such, this factor supports final approval of the settlement. See *Hale v.*

*State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018)

## V. CONCLUSION

For the foregoing reasons, the Parties respectfully requests the Court issue an order granting final approval of the Settlement.

Dated this 23rd day of March, 2022.

| | |
|---|---|
| **MARC R. EDELMAN**<br>Florida Bar No. 0096342<br>medelman@forthepeople.com<br>**MORGAN & MORGAN, P.A.**<br>201 N. Franklin Street,<br>Suite 700<br>Tampa, Florida 33602<br>(813) 223-5502 – telephone<br>(813) 223-5402 – facsimile<br><br>*Counsel for Plaintiffs.* | **JACLYN R. GIFFEN, ESQ.**<br>**LITTLER MENDELSON, P.C.**<br>200 Renaissance Center, Suite 3110<br>Detroit, Michigan 48243<br>jgiffen@littler.com<br><br>**WILLIAM J. SIMMONS, ESQ.**<br>**LITTLER MENDELSON, P.C.**<br>Three Parkway<br>1601 Cherry Street, Suite 1400<br>Philadelphia, Pennsylvania 19102.1321<br>Wsimmons@littler.com<br><br>*Counsel for Defendant* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2022, a true and correct copy of the foregoing was filed electronically and was furnished via electronic transmission and/or U.S. Mail upon the following:

**JACLYN R. GIFFEN, ESQ.**
LITTLER MENDELSON, P.C.
200 Renaissance Center, Suite 3110
Detroit, Michigan 48243
jgiffen@littler.com

**WILLIAM J. SIMMONS, ESQ.**
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, Pennsylvania 19102.1321
Wsimmons@littler.com

*Counsel for Defendant*

                                                          /s/ *Marc R. Edelman*
                                                          **MARC R. EDELMAN, ESQ.**